# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER RAYGOSA, | CASE NO. 12cv0626-BAS (MDD) |
| Petitioner, | REPORT AND RECOMMENDATION RE: PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al, | [ECF No. 10] |
| Respondents. | |

## I. INTRODUCTION

This Report and Recommendation is submitted to United States District Judge Cynthia A. Bashant pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d) of the United States District Court for the Southern District of California. After reviewing the First Amended Petition (ECF No. 10), Respondent's Answer (ECF No. 48), Petitioner's Traverse (ECF No. 50), and the supporting documents and pertinent state court Lodgments, the Court **RECOMMENDS** the Petition be **GRANTED** for the reasons stated below.

## II. FACTS

Javier Raygosa ("Petitioner"), is a California Department of Corrections and Rehabilitation ("CDCR") inmate serving an indeterminate sentence of seventeen

years to life for second-degree murder with a firearm enhancement. (ECF No. 48). Petitioner, proceeding *pro se*, challenges the CDCR's April 1, 2010, final determination that he violated California Code of Regulations (CCR), Title 15, § 3016(c). Section 3016(c) provides, "Inmates shall not distribute, as defined in § 3000, any controlled substance." (ECF No. 10). Distribution means the sale or unlawful dispersing, by an inmate or parolee, of any controlled substance; *or the solicitation of or conspiring with others in arranging for, the introduction of controlled substances into any institution, camp, contract health facility, or community correctional facility for the purpose of sales or distribution*. Cal. Code Regs. tit. 15, § 3000 (2014) (emphasis added).

According to the CDRC Rules Violation Report written by Officer E. Duarte, on July 19, 2009, approved visitor Anabelina Bermudez-Carrillo ("Ms. Bermudez") visited Petitioner at Calipatria State Prison. (Lodg. 3 at 1). During the visit, Ms. Bermudez kissed Petitioner on the mouth. (*Id*. at 4). Security & Investigations Officers E. Duarte and E. Garcia observed the kiss take place from the visiting room via surveillance camera, and it appeared to them that Ms. Bermudez had passed an unknown object into Petitioner's mouth during the kiss. (*Id*.).

After consenting to a search, Ms. Bermudez admitted to having multiple "bindles" of marijuana "secreted" in her vagina. (*Id*.). After an unclothed body search was performed by female officers, Officer Duarte was advised that Ms. Bermudez had relinquished one large bindle, which contained seven smaller bindles of the suspected controlled substance inside a yellow baggie. (*Id*.). The bindles were given to Officer Duarte, who determined the bindles had a total weight of 12 grams. (*Id*.). Officer Duarte also performed a Valley Toxicology Laboratories test on the green, leafy substance in bindle #3, which tested presumptive positive for marijuana. (*Id*.).

While Ms. Bermudez was being escorted to the Visiting Processing Center by Office Duarte, Officer Garcia proceeded to the strip room where the visiting room

staff were conducting a clothed body search on Petitioner for contraband. (Lodg. 4 at 16). Officer Garcia smelled pungent odor coming from Petitioner's mouth. (*Id.*). Garcia ordered Petitioner to open his mouth and stick out his tongue. (*Id.*). Petitioner complied, and Garcia claimed to observe pieces of a green, leafy substance on Petitioner's tongue. (*Id.*).

On April 1, 2010, the Senior Hearing Officer issued the final determination finding Petitioner guilty of violating § 3016(c). The Senior Hearing Officer found Petitioner guilty based on the following evidence: (1) The Reporting Employee's Report (CDC-115) authored by Officer Duarte (Lodg. 3 at 1); (2) Testimony provided by Officer M. Mcnair at the time of hearing [that he observed green, leafy partials on Petitioner's tongue that appeared to be marijuana] (*Id*. at 3); and (3) The incident report authored by Officer Garcia. (*See* Lodg. 4). Petitioner was assessed the following penalties: 180 days forfeiture of good-time credit, 5 days loss of yard privileges, 360 days loss of visits followed by 720 days loss of contact visits, and one year mandatory controlled substance testing. (Lodg. 3 at 5).

### III. PROCEDURAL HISTORY

On November 11, 2009, Petitioner filed an inmate appeal over the rules violation which was denied without comment. (ECF No. 10 at 35-37). On December 15, 2009, Petitioner's second level appeal was denied based on a finding that Petitioner provided no new or compelling evidence to the rules violation report. (*Id*. at 38-39). On April 1, 2010, Petitioner's Director's Level Appeal was denied based on the Senior Hearing Officer's determination that if the staff did not detect Petitioner's actions, Petitioner would have successfully distributed the controlled substance in the facility. (*See* Lodg. 2).

After exhausting his administrative remedies, Petitioner filed a Petition for Writ of Habeas Corpus in Imperial County Superior Court on July 14, 2010. (*See* Lodg. 6). On August 19, 2010, the Petition was denied because the Superior Court found Petitioner was afforded due process of law because the decision of the Senior

Hearing Officer was supported by "some evidence" of the charge of distribution. (ECF No. 10 at 17). On October 1, 2010, Petitioner filed a new habeas Petition to the California Court of Appeals. (Lodg. 8 at 4-12). The California Court of Appeals denied the Petition on November 24, 2010, finding that there was some evidence that Petitioner solicited or conspired for the introduction of a controlled substance into the institution. (ECF No. 10 at 19). On February 17, 2011, Petitioner filed a habeas Petition with the California Supreme Court, which was denied without comment on August 10, 2011. (*Id.* at 20).

On March 12, 2012, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1). On March 15, 2012, the Court dismissed the Petition without prejudice for failure to name a proper respondent. (ECF No. 2). On July 23, 2012, Petitioner filed the First Amended Petition ("FAP"). (ECF No. 10). In his FAP, Petitioner contends that his due process rights were violated. He claims that the fact-finding process was flawed resulting in an arbitrary and capricious decision and that there was insufficient evidence to support the charge of conspiracy to distribute. Relatedly, Petitioner claims that the prison authorities wrongly classified the offense as distribution as opposed to possession. (*Id.*).

## IV. LEGAL STANDARD

Title 28, United States Code, § 2254, subsection (a) provides the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the grounds that he is in custody in violation of the Constitution or laws or treaties of the United States.

As discussed below, all claims presented here were adjudicated on the merits in state court. In order to merit habeas relief, Petitioner must demonstrate that the state court adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court's decision may be "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. Relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall,* __ U.S. __, 134 S.Ct. 1697, 1706-07 (2014), quoting *Harrington v. Richter,* 562 U.S. 86, 131 S.Ct. 770, 787 (2011).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." *Lockyer v. Andrade,* 538 U.S. 63, 75-76 (2003). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions . . ." *Williams,* 529 U.S. at 412. In order to satisfy § 2254(d)(2), a federal habeas petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rests, assuming it rests upon a determination of facts, are objectively unreasonable. *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003). Even if Petitioner can satisfy § 2254(d), Petitioner must still demonstrate a federal constitution violation. *Fry v. Pliler,* 551 U.S. 112, 119-22 (2007); *Frantz v. Hazey,* 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc).

1    Petitioner presented each of the claims raised in his federal habeas Petition to
2 the state trial, appellate, and supreme court in sequential habeas petitions. (Lodg.
3 Nos. 7-10). The appellate court denied Petitioner's claim on the merits and denied
4 findings that the decision was not supported by some evidence. The California state
5 supreme court summarily denied the petition without a statement of reasoning or
6 citation of authority. (*Id*. at 10). "Where there has been one reasoned state judgment
7 rejecting a federal claim, later unexplained orders upholding that judgment or
8 rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S.
9 797, 803-06 (1991). Here, neither the state trial or appellate courts directly
10 addressed Petitioner's claim that he was denied procedural due process in connection
11 with the prison disciplinary proceedings. The silent denial by a state supreme court is
12 presumed to be a denial on the merits. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct.
13 770, 785 (2011) ("when a federal claim has been presented to a state court and the
14 state court has denied relief, it may be presumed that the state court adjudicated the
15 claim on the merits in the absence of any indication or state-law procedural principles
16 to the contrary.")

17 **V.    DISCUSSION**

18    In his FAP, Petitioner alleges he was denied his due process rights in connection
19 with his disciplinary hearing. First, Petitioner asserts he was deprived of his due
20 process rights because the fact-finding process was flawed resulting in an arbitrary and
21 capricious decision. (ECF No. 10 at 2). Specifically, Petitioner claims that the Senior
22 Hearing Officer produced testimony from Ms. Bermudez under duress, rendering his
23 disciplinary hearing flawed. (*Id*. at 8). Second, Petitioner claims that prison officials
24 failed to meet their burden to present "some evidence" of distribution at Petitioner's
25 disciplinary hearing and, at best, he should have only been found guilty of the less
26 serious charge of possession. (*Id*. at 6-7).

27    In their Answer, Respondents deny that the disciplinary hearing was flawed.
28 (ECF No. 48). Respondents contend that the Senior Hearing Officer's findings were

supported by "some evidence." (*Id*.). Likewise, Respondents deny the claim that the Senior Hearing Officer wrongly classified the rules violation. (*Id*.).

### A. There is no evidence that the statement of Ms. Bermudez used against Petitioner was coerced.

Under the Fourteenth Amendment, due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good-time credits. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Prison disciplinary proceedings command the least amount of due process along the prosecution continuum. *United States v. Segal*, 549 F.2d 1293, 1296 (9th Cir. 1977). Federal procedural due process is satisfied in connection with a prison disciplinary hearing, if the petitioner is provided written notice of charges no less than twenty-four hours before his appearance, a written statement is authored by the fact finders as to the evidence relied on and the reasons for the disciplinary action, and the petitioner is allowed to call witnesses and present documentary evidence in his defense. *Wolff,* 418 U.S. at 563-566.

Petitioner has not identified any procedural deficiencies. The lodgements show Petitioner received all pertinent documents more than twenty-four hours prior to the hearing; the preliminary report was served within fifteen days of discovery; and the hearing was held within thirty days of service. (*See* Lodg. 6). Petitioner requested that witnesses Officer Castro and Officer Ruelas testify. (*Id*. at 42). At the time of the hearing Petitioner elected not to call them and instead requested that Officer Mcnair testify. (*Id*.). The request was approved by the Senior Hearing Officer. (*Id.*).

In his FAP, Petitioner alleges that the introduction of Ms. Bermudez's statment that she passed him bindles of marijuana during a kiss was improper because it was coerced and elicited under duress. (ECF No. 10 at 8). Use of coerced statements may render proceedings fundamentally unfair. *See William v. Woodford*, 384 F.3d 567, 593 (9th Cir. 2004). The state court did not directly address Petitioner's claim that the statements obtained and used from Ms. Bermudez were

coerced. (ECF No. 10 at 17).

Petitioner has presented no evidence in support of his claim that the statements obtained from Ms. Bermudez were coerced. Petitioner's unsupported conclusory allegation is insufficient to raise a genuine issue. *Wilson v. Terhune*, 319 F.3d 477, 482 (9th Cir. 2003).

Accordingly, the Court **RECOMMENDS** that Petitioner's due process claim challenging the use of statements made by Ms. Bermudez be **DENIED.**

### B. The evidence is insufficient to support the disciplinary committee's decision that Petitioner is guilty of distribution.

Petitioner alleges that there was insufficient evidence presented to constitute "some evidence" of distribution. (*See* ECF No. 10). Petitioner alleges that the disciplinary hearing committee wrongly found him guilty of distribution of a controlled substance under CCR § 3016(c), as defined at § 3000, when the evidence only supported, at best, a finding that he had possessed a controlled substance in violation of § 3016(a). (*Id*.). Petitioner requests that the Court order Calipatria State Prison to reduce the rules violation charge to possession which carries a lesser punishment. (*Id*.). Specifically, Petitioner claims the Senior Hearing Officer disregarded available testimony including Ms. Bermudez's statements that Petitioner did not want or ask her to bring any contraband into the prison, and that no list of clients or money, no phone numbers, and no recorded conversations were produced to support the charge of distribution. (*Id*.).

The rules violation report indicated that Ms. Bermudez used the restroom located inside the foyer prior to entering the visiting room. (Lodg. 3 at 1). The location of the restroom gave Ms. Bermudez privacy to retrieve the secreted contraband. And, there was evidence that Ms. Bermudez passed some amount of marijuana to Petitioner through a kiss. *(Id*. at 2-6). There is no evidence of the amount of marijuana passed in the kiss. Later, Ms. Bermudez was found to have 7 bindles of marijuana contained within a plastic bag secreted in her vagina. (*Id.* at 2). In total, 12 grams of marijuana remained. (*Id*.). If packaged equally, each bindle

contained approximately 1.5 grams of marijuana. (*Id*.). The additional marijuana was not accessible to Petitioner during the visit. There was no evidence of any partnership between Petitioner and Ms. Bermudez for further distribution within the prison nor any evidence that Petitioner was going to further distribute the marijuana he received.

The state appellate court denied Petitioner's claim stating that, "there is some evidence to support the charge of distribution." (ECF No. 10 at 17-18). The state appellate court found that the rules violation report which indicated an officer saw Ms. Bermudez kiss Petitioner, the fact that Ms. Bermudez had multiple bindles of marijuana and had passed a bindle to Petitioner, and the green leafy substance observed on Petitioner's tongue, was sufficient evidence to support the charge of distribution. (*See* Lodg. 3). Petitioner's claims were denied by the state appellate court on the basis that Petitioner had solicited or conspired with another in arranging for the introduction of controlled substance into the institution. (ECF No. 10 at 19).

In connection with disciplinary actions, a petitioner must demonstrate that the decision reached was arbitrary and not supported by "some evidence" within the record. *Superintendent, Massachusetts Correctional Institution v. Hill,* 472 U.S. 445 (1985). "The 'some evidence' standard is minimally stringent, such that a decision will be upheld if there is 'any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Powell v. Gomez,* 33 F.3d 39, 40 (9th Cir. 1994) (emphasis omitted) (citing *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)).

Here, the question is whether there is "some evidence" of distribution. As defined by the State of California for these purposes, distribution means the sale or unlawful dispersing, by an inmate or parolee, of any controlled substance; *or the solicitation of or conspiring with others in arranging for, the introduction of controlled substances into any institution, camp, contract health facility, or community correctional facility for the purpose of sales or distribution*. Cal. Code Regs. tit. 15, §

3000 (2014) (defining distribution for purposes of § 3016(c) - emphasis added).

Conspiracy to distribute requires proof of "'an agreement to commit a crime other than the crime that consists of the sale itself.' . . . Were the rule otherwise, every narcotics sale would constitute a conspiracy." *United States v. Lennick,* 18 F.3d 814, 819 (9th Cir. 1994) (internal citation omitted). In the Ninth Circuit, as in other circuits, mere sales to other individuals do not establish a conspiracy to distribute or possess with intent to distribute; rather "the government must show that the buyer and seller in question had an agreement to further distribute the drug." *Id.*

The decision of the state appellate court is based upon the facts that a distribution occurred from Ms. Bermudez to Petitioner and that Ms. Bermudez had additional bindles of marijuana in her possession. (ECF No. 10 at 19). The charge, however, required some evidence that Petitioner agreed with Ms. Bermudez or others to further distribute marijuana within the prison. Inasmuch as the additional marijuana in Ms. Bermudez's possession was inaccessible to Petitioner, the mere fact that Ms. Bermudez had additional bindles provides no evidence of Petitioner's intent to distribute. And, there is no evidence that the bindles retained by Ms. Bermudez were further segmented into smaller bindles indicative of distribution. If so, it would be possible to infer that the marijuana passed to Petitioner was similarly segmented providing some evidence of intent to further distribute.

The only evidence, apart from the additional bindles retained by Ms. Bermudez, pointing to further distribution is the statement of the investigating officer that Ms. Bermudez told him that "during the kiss I past [sic] bindles over to him." (Lodg. 3 at 2). There is no evidence, however, regarding the number of bindles or amount of marijuana passed by the one kiss. The use of the plural "bindles" by the investigating officer in reporting on the statements made by Ms. Bermudez is the only evidence in the record supporting the notion that Petitioner may have received more than one bindle. Inasmuch as the evidence is that each bindle contained approximately 1.5

grams of the leafy marijuana, there appears to be some limit as to how much could be passed in one kiss. There was no evidence of how much marijuana would demonstrate an intent to further distribute. Also presented was evidence that a cell phone retrieved from Ms. Bermudez reflected text messages from other inmates at Calipatria. (ECF No. 10 at 73). There was no evidence, however, tying those contacts to Petitioner.

A review of cases in which petitioners challenge the sufficiency of the evidence supporting a charge of conspiracy to distribute suggests that some additional evidence of intent to distribute is required. *See*, *e.g., Barboza v. Hill*, 2011 WL 6100274 *3 (E.D. Cal. December 7, 2011) (expert testimony presented at the disciplinary hearing that the 2.77 grams of heroin found in petitioner's possession indicates possession for distribution); *Banner v. Janda* 2014 WL 1953349 *9 (S.D. Cal. May 15, 2014) (eight individually wrapped bindles of heroin, with a total weight of .2 grams, found in petitioner's mouth); and, *Hunter v. Tilton,* 2010 WL 2089377 *7 (E.D. Cal. May 21, 2010) (in addition to marijuana, a letter found in cell detailing a plan to set up a distribution ring in the prison).

The Court finds that the evidence relied upon by the disciplinary committee was insufficient to support its decision that Petitioner conspired to introduce a controlled substance into the facility for the purpose of sales or distribution. The evidence was sufficient, however, to support a decision that Petitioner possessed a controlled substance within the facility.

Accordingly, the Court **RECOMMENDS** that Petitioner's due process claim challenging the classification of the rules violation be **GRANTED.**

## VI. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) Approving and adopting this Report and Recommendation; (2) Granting Petitioner's First Amended Petition for a writ of

1  habeas corpus; and, (3) ORDERING that Defendant take appropriate administrative
2  action consistent with this ruling.
3     **IT IS HEREBY ORDERED** that any written objections to this Report must be
4  filed with the Court and served on all parties no later than **October 17, 2014**. The
5  document should be captioned "Objections to Report and Recommendation." Any
6  reply to objections shall be served and filed by November 3, 2014. The parties are
7  advised that failure to file objections within the specified time may waive
8  the right to raise those objections on appeal of the Court's order. *Martinez*
9  *v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).
10     **IT IS SO ORDERED.**

13 DATED: September 23, 2014

Hon. Mitchell D. Dembin
U.S. Magistrate Judge